IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT C. BROWNE,                                            Case No. 08-6394-AC

                    Plaintiff,                              OPINION AND ORDER

              v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

ACOSTA, Magistrate Judge:

## **INTRODUCTION**

Plaintiff Scott C. Browne ("Browne"), brings this action pursuant to the Social Security

Act, 42 USC § 405(g), to obtain review of a final decision of the Commissioner of the Social

Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits.

For the reasons set forth below, the decision of the Commissioner should be affirmed.

1  - OPINION AND ORDER

## PROCEDURAL BACKGROUND

Browne filed an application for Disability Insurance Benefits on December 3, 2002, alleging disability since February 20, 2001, due to pain in his back and legs.  (Tr. 86-88)  Denied initially and on reconsideration, Browne requested a hearing.  (Tr. 58)  A hearing was held before Administrative Law Judge ("ALJ") Peter Belli on October 25, 2004.  (Tr. 440-479)  The ALJ found Browne was not disabled and therefore not entitled to benefits.  (Tr. 30-44)   On April 8, 2005, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.  (Tr. 45-47)

A second hearing was held before ALJ John Madden, Jr. on April 5, 2006. (Tr. 531-562) The ALJ found Mr. Browne was not entitled to benefits.  (Tr. 14-27)  Browne requested a review of the hearing decision.  (Tr. 11)  On August 28, 2006, the Appeals Council denied Browne's request for review.  (Tr. 8-11)  Browne filed a Complaint to Review and Set Aside Decision in U.S. District Court for the District of Oregon, requesting review of the administrative action. (Tr. 13)  On September 6, 2007, based upon the stipulation of the parties, the Court reversed the ALJ's decision and remanded for further administrative proceedings, ordering the ALJ to evaluate and specify the weight given to the opinions of state agency psychologists Dr. Gail Wahl and Dr. Charles Reagan; to further evaluate plaintiff's objective complaints; to specify the weight given to the lay witness statements; to reassess plaintiff's subjective complaints; and to further evaluate plaintiff's ability to perform other work, utilizing the assistance of additional vocational expert testimony.  Tr. 604-605.

A hearing was held on remand before ALJ William Philip Horton on June 2, 2008.  Tr. 711-740.  On August 5, 2008, the ALJ issued a decision again denying plaintiff's claim for

benefits. Tr. 563-576. The Appeals Council did not review the case on its own motion, thus, the ALJ's decision is the final decision of the Commissioner pursuant to 20 C.F.R. §§ 404.981, 404.984. Browne now seeks judicial review of the Commissioner's decision.

## FACTUAL BACKGROUND

Born in 1964, Browne was 40 years old at the time of the first hearing on October 25, 2004. Tr. 446. He completed the twelfth grade. Browne worked as a package driver for UPS for 13 years. Tr. 447. The medical records set forth Browne's medical history as it relates to his claim for benefits. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, the details of those records will not be recounted here.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert denied*, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53

3 - OPINION AND ORDER

F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision.  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The

Commissioner's decision must be upheld, however,  if "the evidence is susceptible to more than

one rational interpretation."  *Andrews*, 53 F.3d at 1039-40.

## <u>DISABILITY ANALYSIS</u>

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. § 404.1520.  Below is a summary

of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir.

1999):

<u>Step One</u>.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity.  If so, the claimant is not disabled.  If the claimant is not engaged in substantial

gainful activity, the Commissioner proceeds to evaluate claimant's case under step two.  20

C.F.R. § 404.1520(b).

<u>Step Two</u>.  The Commissioner determines whether the claimant has one or more severe

impairments.  If not, the claimant is not disabled.  If the claimant has a severe impairment, the

Commissioner proceeds to evaluate the claimant's case under step three.  20 C.F.R.

§ 404.1520(c).

<u>Step Three</u>.  Because disability cannot be based solely on a severe impairment, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part

404, Subpart P, Appendix 1.  If so, the claimant is disabled.  If the claimant's impairment does

not meet or equal one listed in the regulations, the Commissioner proceeds to step four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. If so, the claimant is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner proceeds to step five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. If not, the claimant is disabled. If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*.

## ALJ's DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on February 20, 2001, through his date last insured of December 31, 2007. Tr. 569. This finding is not in dispute.

At step two, the ALJ found Browne had the medically determinable severe impairments of chronic back pain, dysthymia, anxiety disorder, and a pain disorder associated with medical and psychological factors. *Id.* This finding is in dispute.

At step three, the ALJ found that Browne did not have an impairment or combination of impairments, considered alone and in combination, that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ determined that Browne's chronic back pain limits him to the performance of sedentary work as defined in 20 C.F.R. 404.1567(a). Browne requires the opportunity to alternate between sitting and standing. Tr. 570. His dysthymia, anxiety and pain disorders require no interaction with the general public and no close interaction with co-workers. The ALJ found Browne unable to perform his past work. Tr. 575-576.

At step five, the ALJ found that Browne retained the capacity to perform a limited range of light work, including work as a sorter, patcher, or surveillance system monitor. As a result, the ALJ found Browne not disabled within the meaning of the Act. *Id.*

## DISCUSSION

Browne contends that the ALJ erred by: (1) failing to give clear and convincing reasons for rejecting plaintiff's testimony; (2) failing to give legally sufficient reasons for rejecting the opinion of the treating physician, Dr. Sharman; (3) failing to give clear and convincing evidence for rejecting the opinions of examining psychologists Dr. Wahl and Dr. Reagan, and; (4) failing to give proper consideration to the lay evidence.

## I. The Opinion of Kent Sharman, M.D.

Kent Sharman, M.D., examined Browne on February 22, 2001, two days after Browne suffered a lower back strain at work as a UPS driver. Tr. 299, 309. His chief complaints were pain in his legs and lower back, numbness, disturbed sleep, an inability to walk longer than one-quarter mile or drive longer than thirty minutes due to the pain. Dr. Sharman placed Browne on light duty, instructing him to not lift, push, or pull objects weighing over ten pounds. Tr. 308. Brown's condition worsened. *Id.* A lumbar x-ray revealed a transitional vertebra with partial lumbarization of S1 and pseudoarthrosis of the S1 transverse process. Tr. 319. An MRI revealed mild spinal stenosis at L5-S1. Tr. 251.

On March 8, 2001, Browne reported to Dr. Sharman the pain had decreased from a 10/10 to 7/10, and at times was as low as 5/10. Browne also reported that physical therapy was helping, especially in the form of traction. Tr. 307. On March 14, Browne reported that a TENS[1] unit was helping as well. Tr. 304. On April 13, however, Browne reported to Dr. Sharman that he could not tolerate light duty work. *Id.* Browne stated to Dr. Sherman that while the physical therapy and the TENS unit reduced the pain significantly (down to 1/10 at times), working part time exacerbated the symptoms to such a degree that Browne felt he could not continue working. Tr. 305. Dr. Sharman diagnosed an L5-S1 disc herniation and instructed Browne to stay off work. Tr. 358. On May 9, Dr. Sharman wrote a letter to Browne's counsel stating Browne is unable to return to truck driving and should seek re-training to help him find a different vocation. Tr. 354.

---

[1] A TENS (transcutaneous nerve stimulation) unit provides electrical stimulation of nerves for relief of pain, either by electrodes attached to the skin or by an apparatus manually held against the skin; the stimulus interferes with neural transmission of pain signals and thus has an analgesic effect. *Dorland's Electronic Medical Dictionary,* p. 463, 29th Ed. (2000).

From the onset of the limiting condition to present, Browne lived with his wife and their child. A February 12, 2003, statement from his wife describes Browne as "moody, defensive, and grumpy." *Id*. The statement also mentioned that Browne tries to help around the house, but is limited, stating that Browne does laundry five times a week, cannot vacuum, takes out the trash, does the dishes, cannot lift their child, uses the treadmill when he can, wakes up in pain and moves slowly throughout the day. Tr. 137-148.

Browne was evaluated by a number of doctors before seeing Dr. Sharman again in January 2004. Tr. 247, 348-53, 215, 224. During the period between May 2001 and January 2004, Browne's condition continued. Tr. 209-213. Browne continued using the TENS unit and continued physical therapy. Tr. 149-151. Bending, walking, and sitting or standing for periods of longer than forty-five minutes continued to cause Browne pain. *Id*. The side effects of prescription drugs were causing Browne to feel fatigued, anxious, and unable to concentrate. In May 2003, Brown was taking 1000 mg of Ibuprofen every four hours in addition to Skelaxin, Naparosyn, Vioxx and Relafen. Tr. 152-154, 348-353. On January 7, 2004, Browne reported to Dr. Sharman that pain levels fluctuated between 2/10 at best and 7/10 at worst. Browne also stated the he avoided many daily activities. Tr. 356. Dr. Sharman diagnosed Browne with chronic L4S1 disk herniation, noted that Browne was tearful and depressed, and did not realease Browne to work. Tr. 357.

An October 18, 2004, letter from Dr. Sharman to Browne's counsel states that Dr. Sharman "suspect[s] that [Browne] would be unable to work full time at a sedentary level." Tr. 371. Dr. Sharman noted that Browne was somewhat restless, walked around due to the pain, and was tearful. In March, 2005, Browne remained in constant low back pain, with radicular pain in

his left calf and foot.  Tr. 376.  He reported to Dr. Sharman a lack of interest in daily activities,

low energy, mood disturbances, feelings of sadness, social isolation, increased irritability, and

poor sleep.  *Id.*  Noting Browne's despressed mood, Dr. Sharman prescribed Lexapro.  *Id.*  The

following month, Browne reported that Lexapro helped reduce his anxiety, agitation and

irritability, but that he was having heart palpitations and having trouble sleeping.  *Id.*  Browne

reported that he wished to stop taking medication at this time.  Tr. 385.

Dr. Sharman recorded a history of lower back pain with radicular symptoms.  Tr. 376.

Dr. Sharman noted the prescribed drugs, whether for pain or psychological issues, were causing

Brown more discomfort than relief.

Dr. Sharman concluded:

> **REPORT:** Although I am unable to provide any objective findings, Mr. Browne's
> examination on that date [January 7, 2004] does provide evidence of ongoing
> chronic disc herniation.  He did specify that because of pain, he does avoid many
> daily activities, and I suspect he would be unable to work full time at a sedentary
> level.
>
> I apologize for not being able to provide more objective reasoning for this
> suspicion but certainly a work assessment/functional assessment could be
> performed by a physical therapist.

Tr. 371.

An ALJ may reject the uncontroverted opinion of an examining physician only for "clear

and convincing reasons."  *Magallanes v. Bowen,* 881 F.2d 747, 751 (Ninth Cir. 1989).  If the

physician's opinion is controverted, the ALJ must articulate "specific, legitimate reasons" to

reject it.  *Id.*  The ALJ may provide specific, legitimate reasons for rejecting controverted

medical opinions by summarizing the conflicting evidence in detail.

The ALJ gave "limited weight" to Dr. Sharman's opinion.  Tr. 571.  The ALJ stated:

In assessing opinion evidence as to the claimant's physical residual capacity, the undersigned affords only limited weight to the opinion by treating specialist Dr. Kent Sharman, M.D. In January 2006 and October 2004, he wrote that the claimant was unable to perform sedentary work even with simple tasks on a full time basis and was expected to miss two days of work per month. . . . However, for purposes of the Social Security program, an opinion of disability is an issue reserved to the Commissioner. [Citation omitted.] Thus, the regulations at 20 CFR 404.1527(d)(e) direct that Dr. Sharman's opinions, in spite of being a treating source, are not entitled to special weight when other independent grounds support rejection of such opinion. To begin, no other examining or evaluating physician, and such sources are numerous, refer to total disability. Rather, orthopedic impartial examiner Anthony J. Smith, M.D.; treating orthopedic specialist, Dara Parvin, M.D.; orthopedic independent examiner, Richard C. Arbeene, M.D.; reviewing state State agency physicians, Charles Spray, M.D.; Sharon Elder, M.D.; and Martin B. Lahr, M.D.; and Raymond P. Nolan, M.D. all endorse a capacity for work at sedentary exertion with restrictions. [Citation omitted.] Treating orthopedist, Dr. Parvin, told the claimant he could return to work at any time as early as July 2001; vocational rehabilitation was also recommended (Exhibit 5F, page 2). No sources, even those who observed some limitations, have referred the claimant for specialized care, such as a pain clinic, or surgery. Second, consistent with their endorsement of work, Drs. Smith, Parvin, Arbeene and Nolan found no persistent remarkable objective clinical signs.

Tr. 571.

The ALJ stated that Dr. Sharman's opinion was given limited weight, in part, because of an "embellishment underpinning as where, at Exhibit 38F, page 9, [Dr. Sharman] refers to the claimant having 'a chronic pain syndrome from failed back surgical procedures.'" Tr. 571. Plaintiff argues that this was a mistake likely resulting from Dr. Sharman having not seen Browne for over a year at the time Dr. Sharman made the erroneous January 2007 chart note. Tr. 698. The ALJ stated that the record and testimony make very clear that Browne never had surgery, and that surgery has not been proposed:

Dr. Sharman's reporting also depicts an embellishment underpinning as where, at Exhibit 38F, page 9, he refers to the claimant having "a chronic pain syndrome from failed back surgical procedures." As is very clear from the record and

> testimony, the claimant has <u>not</u> had any back surgeries, nor has surgery been proposed.

Tr. 571.

Furthermore, the ALJ rejected Dr. Sharman's opinion because Dr. Sharman had previously stated plaintiff should consider a different vocation than his truck driver job and should seek retraining. Tr. 354, 571. An ALJ may reject a doctor's opinion based on inconsistencies in his reports. *Morgan v. Comm'r of the Soc Sec Admin*, 169 F.3d at 603 (9th Cir. 1999). Dr. Sharman's conclusion that Browne is unable to perform sedentary work is inconsistent with Dr. Sharman's finding that Browne could find a different vocation with retraining. Determining whether inconsistencies are material or in fact inconsistent at all and whether certain factors are relevant to discount a doctor's opinion falls within the ALJ's responsibility for resolving conflicts in medical testimony. *Morgan*, 169 F.3d at 603 (9th Cir. 1999).

> Dr. Sharman previously stated the claimant should consider a different vocation than his truck driver job and should seek retraining (Exhibit 17F, page 1). Dr. Sharman's care of the claimant has been conservative throughout. He has prescribed pain medications, but little else. Consistent therewith, claimant testified at the hearing that pain medication has been used some, but not long-term. The claimant also testified that currently for palliative care of his spine he sees Dr. Sharman about two to three times a year. However, Dr. Sharman's charts show the claimant's lumbar spine treatment is negligible. After being first treated in February 2001, he did not again seek treatment for more than two-and-one-half years between May 2001 and January 2004. He then sought no care for the next year between March 2004 and March 2005. Next, he did not return for seven months between May 2005 and October 2005. After that, he did not return for two months between November 2005 and January 2006. Subsequently, he sought no care for nine months between February 2006 and October 2006. [Citation omitted.] Thus, during the sixty-nine months between February 2001 and October 2006, the claimant did not seek any medical care, for his back from Dr. Sharman during 61 of these months. Such limited treatment, when claimant had an accepted condition under workmen compensation, and Oregon Health Plan coverage, is not explained. Less weight is also given to Dr. Sharman, a family practitioner, where work capacity statements from other

physicians come from specialists in the surgical and rehabilitative care of the musculoskeletal systems, like Drs. Smith and Parvin and Arbeene.  To the extent Dr. Sharman's records and reporting can be read as limiting the claimant to no more than sedentary work, this much is accepted.

Tr. 571-572.

Browne argues that the ALJ did not give legally sufficient reasons, specifically, clear and convincing evidence, for rejecting the opinion of the ALJ.  He argues that as the treating physician, Dr. Sharman's opinion should be given controlling weight, even if the treating physician's opinion is inconsistent with the evidence, citing 20 CFR. § 404.1527.  The ALJ stated that no other examining or evaluating physician agreed with Dr. Sharman's finding of total disability and had instead endorsed the capacity for sedentary work with light exertion.  Dr. Parvin even said Browne could return to work as a early as July 2001.  Plaintiff asserts that Browne's condition worsened after July 2001.  In January 2006 and October 2004, Dr. Sharman wrote that Browne was unable to perform sedentary work with simple tasks on a full-time basis and was expected to miss two days of work per month.  The ALJ, citing 20 C.F.R. § 404.1527(e)(1-3), noted that an opinion of disability is an issue reserved to the Commissioner and that Dr. Sharman's opinions, in spite of being a treating source, are not entitled to special weight under the regulations.

Browne argues that the ALJ's statement that Drs. Smith, Parvin, Arbeene and Nolan found no persistent remarkable objective clinical signs overlooks the findings of these physicians.  Browne notes Dr. Arbeene and Dr. Smith's finding that Browne had trouble lying flat on his back and could not lie with both legs extended due to pain.  Dr. Smith's impression was a sprain of the lumbroscral spine with probable herniation of the L4-5 disc, which plaintiff

claims indicates severe objective findings.  Dr. Smith also found that plaintiff could not sit for more than ten minutes on a bench-type surface, and, like Dr. Nolan, found plaintiff could lift no more than ten pounds.

Browne's arguments dispute the ALJ's findings on the evidence in the record, but do not establish that the ALJ's findings are beyond the discretion to resolve conflicts in the medical evidence.  20 C.F.R. § 404.1527.  The ALJ noted that Browne's inability to sit for more than ten minutes or lift objects weighing more than ten pounds does not constitute a persistent remarkable objective clinical sign of permanent disability.  Moreover, the ALJ cited Dr. Nolan's "impression" of a sprained lumbroscral spine, which does not constitute a permanent remarkable objective clinical sign.  The ALJ provided specific, legitimate reasons for rejecting controverted medical opinions by summarizing the conflicting evidence in detail.

The ALJ stated that Dr. Sharman's opinion was given limited weight, in part, because of the infrequency of Dr. Sharman's evaluations of Browne, noting that Browne did not seek medical care from Dr. Sharman for sixty-one of the sixty-nine months between February 2001 and October 2006.  Browne contends that while this is indeed infrequent, no other evaluating or examining physician saw Browne more than Dr. Sharman, and that most of these physicians only saw Browne once.  While this argument has some merit, it does not, on its own, require giving Dr. Sharman's opinion any more weight than that which the ALJ accorded it.  The ALJ identified clear and convincing reasons for granting limited weight to Dr. Sharman's opinion.

The ALJ gave limited weight to Dr. Sharman's opinion also because Dr. Sharman is a family practitioner with no specialization or particular expertise like Drs. Smith, Parvin and Arbeene.  Plaintiff contends that Dr. Sharman's continuing relationship with Browne "makes him

especially qualified to evaluate reports from examining doctors, to integrate medical information

they provide, and to form overall conclusions as to functional capacities and limitations, as well

as to prescribe or approve overall course of treatment," citing *Lester v. Chater*, 81 F.3d 821, 833

(9th Cir. 1995).  Plaintiff also notes that unlike Drs. Nolan and Smith, Dr. Sharman considered

Browne's mental disorders when evaluating his physical condition.  Plaintiff contends that the

opinion of a physician that considers both physical and psychological factors does not conflict

with the opinion of a physician that only considered physical factors, as the opinions were not

drawn from the same facts. *Beecher v. Heckler*, 756 F2d 693, 694-695 (1985).  This point is valid

but establishes only that the ALJ cannot rely solely on the findings of Dr. Sharman contrasting

with the findings of the other physicians as the reason for rejecting Dr. Sharman's opinion.  Here,

the ALJ did not.

The ALJ rejected Dr. Sharman's opinion, in part, because no sources, even those who

observed limitations, referred Browne to specialized care, such as a pain clinic or surgery.  The

ALJ also noted that Dr. Sharman's care of Browne had been conservative throughout, stating that

he had prescribed pain medication but little else (Tr. 571), and a conservative course of treatment

is an adequate reason for an ALJ to reject a doctor's opinion of disability. *Rollins v. Mississippi*,

261 F3d 853, 857 (9th Cir 2001).  The ALJ further rejected Dr. Sharman's opinion because

Browne had limited treatment with him.  Under 20 C.F.R. § 404.1527(d)(i), the ALJ may

consider the length of the treatment relationship and the frequency of examination in determining

the weight to give a treating source's opinion.

## III.  The Opinions of Drs. Wahl and Reagan Regarding Plaintiff's Mental Limitations

The ALJ gave "limited weight" to the opinion of evaluating psychologists Dr. Wahl and

Dr. Reagan that Browne's pain impaired his concentration, attention, socialization and adaptive

skills.  Dr. Wahl concluded that when Browne is in severe pain, "he is pretty much

incapacitated."  Tr. 353.  Dr. Wahl assessed Browne a Global Assessment of Function (GAF)[2]

score of 45 (Exhibit 16F, page 6), while Dr. Reagan assesed Browne with a GAF of 45-50

(Exhibit 27F, pages 5-6).   This range  indicates serious mental impediment to occupational

functioning, applying the standard found in *Diagnostic and Statistical Manual of Mental*

*Disabilities*, p. 32, 4th Ed. (DSM-IV), as endorsed by the American Psychiatric Association.

The ALJ could not find Browne more limited mentally in a work setting than endorsed by

the reviewing state psychologists Drs. LeBray and Rethinger in August 2006 and June 2003

(Exhibits 14F and 35F).  The ALJ gave specific weight to the opinions of Drs. Lebray and

Rethinger.  Browne reported having no concentration, feeling spacey, being increasingly

depressed, having anxiety from fear of again hurting himself, and difficulty in interacting with

others because of easy irritability or anger.  Browne testified he continued to take no medications

for any mental condition.  Browne had tried medication in the past, but did not like the side

effects.

_____

[2]  The GAF scale is a tool for "reporting the clinician's judgment of the individual's
overall level of functioning."  American Psychiatric Ass'n., Diagnostic and Statistical Manual of
Mental Disorders 32 (4th ed. 2000).  It is essentially a scale of zero to 100 in which the clinician
considers "psychological, social, and occupational functioning on a hypothetical continuum of
mental health-illness," not including impairments in functioning due to physical or environmental
limitations.  *Id* at 34.  A Global Assessment of Functioning ("GAF") score between 51 and 60
indicates "Moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic
attacks) or moderate difficulty in social, occupational or school functioning (e.g., no friends,
unable to keep a job).

The ALJ rejected the opinions of the evaluating psychologists, in part, because Dr. Wahl's and Dr. Reagan's own mental status evaluations did not support their assessments.  In May 2003, Dr. Wahl stated that while Browne was situationally distraught due to pain, his mental status responses were normal.  In September 2005, Dr. Reagan's mental status evaluation of Browne, apart from his pain behavior, was also normal (Exhibits 27F, pages 4-5). Furthermore, Drs. Wahl and Reagan did not administer validity tests to assist in measuring the credibility of their findings.  The ALJ's decision to grant the opinions of Dr. Wahl and Dr. Reagan limited weight is supported by clear and convincing evidence.

The ALJ also discredited the opinions of Dr. Wahl and Dr. Reagan because their findings do not support their assessments.  In May 2003, Dr. Wahl opined that Browne's concentration appeared somewhat impaired, that he seemed to have lost most of his ability to interact in a socially appropriate manner, and that his adaptive skills were poor.  In September 2005, Dr. Reagan opined that Browne had difficulty sustaining concentration, attention and persistence secondary to pain.  Dr. Reagan also noted Browne could engage in appropriate social interaction, however, this was time-limited as a function of his pain.  The ALJ dismissed these opinions because Browne's apparently pain-induced mental distress did not reappear when the physicians examined him for his pain complaints; they found Browne had no evidence of nervousness, anxiety, or depression.  The Commissioner concedes that this reasoning is incorrect because the ALJ's statement that mental status responses were normal did not take into consideration the mental status findings noted by Browne (Pl. Br. at 17).  The Commissioner points out, however, that the ALJ's error is harmless because it did not affect the result of the case. *Parra v. Astrue*, 481 F3d 742, 747 (9th Cir. 2007) (applying harmless error when it did not affect that result).

Here, the Commissioner contends that the error was harmless because the ALJ dismissed the opinions of Dr. Reagan and Dr. Wahl for additional reasons supported by substantial evidence. (Def. Br. at 14.)  The Commissioner is correct, as the ALJ identified other clear convincing reasons supported by the record for dismissing their opinions.

The ALJ rejected Dr. Wahl's and Dr. Reagan's opinions because they were based on one-time evaluations.  In *Holohan v. Mississippi*, the Ninth Circuit stated, "even a treating physician's opinion on a matter may be entitled to little, if any weight when he or she has not seen the claimant enough to 'have obtained a longitudinal picture' of the claimant's impairments" 246 F.3d 1195, 1202-1203 n.2 (9th Cir. 2001)(quoting 20 C.F.R. § 404.1527(d)(2)(i)).  Plaintiff contends that the fact that both Dr. Wahl's conclusions and Dr. Reagan's conclusions were similar and generally consistent lends more weight to their separate opinions (Pl. Br. at 17).  While the opinions of Dr. Wahl and Dr. Reagan support each other, the findings upon which they based their opinions are contradicted by the findings of evaluating physicians whose opinions are supported by the record as whole.  The ALJ identified clear and convincing reasons for dismissing the opinions of Dr. Wahl and Dr. Reagan.

The ALJ found that Dr. Wahl's and Dr. Reagan's opinions were not consistent with Browne's activity level. The ALJ noted reports of Browne's activities including walking, camping, playing guitar, woodworking, working on his car and working on the computer, getting his children ready for school, mowing the lawn, taking out light trash, helping with laundry and dishes, driving, shopping twice a month at night, cleaning the porch with a hose, bringing his daughter to and from school, turning on the sprinkler system, handling finances, and following simple written and verbal instructions.  Browne testified that he does indeed engage in these

activities.  Tr. 574, 721-722, 734.  An ALJ may reject a doctor's opinion that appears to be inconsistent with a claimant's level of activities.  *Rollins*, 262 F.3d 853, 856 (9th Cir. 2001).  Dr. Wahl's and Dr. Reagan's assessment of a GAF score of 45, indicating serious mental impediment to occupational functioning, is not supported by Browne's activity level.  The ALJ's determination to give Dr. Wahl's and Dr. Reagan's opinions limited weight is supported by clear and convincing evidence.

Plaintiff takes issue with the ALJ's rejection of Dr. Wahl's and Dr. Reagan's opinions on the basis that they were not consistent with reports of Browne's activity level.  It is well-established, however, that the ALJ's conclusion must be upheld even when the evidence is susceptible to more than one rational interpretation.  *Morgan*, 169 F.3d at 599 (9th Cir. 2001).  Thus, the ALJ gave clear and convincing evidence, and specific and legitimate reasons for rejecting the opinions of Dr. Wahl and Dr. Reagan.

### III. The ALJ Properly Considered the Lay Witness Evidence

An ALJ need only give germane reasons, not clear and convincing evidence, to discredit the testimony of lay witnesses.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  The ALJ stated that he considered the lay statements of Renee Brown, Deren C. Dibble, Jayleene Sellars, Matt Sellars, and Duane Huey. (Tr. 574; Tr. 137-148; Tr. 164.)  The ALJ found that the lay witness testimony was not inconsistent with a limitation to sedentary work only.  The ALJ rejected lay statements to the extent they support any inference that Browne's condition prevented him from doing any work, even sedentary, because such statements were counter to the evidence as a whole. (Tr. 575.)

Browne's sister-in-law, Jaylene Sellars, wrote a letter stating she observed Browne attempting to do the dishes but needing to take breaks due to back pain. She also observed that Browne could not sit at the computer with her children without getting up and pacing. His chores were limited because he could not stand or sit for very long without moving around to ease pain. Similarly, Diane Huey, Browne's former co-worker, wrote a letter stating she observed Browne to have difficulty performing tasks, having to take numerous breaks. Matt Sellars, Browne's brother-in-law, wrote that he had seen Browne having difficulty performing domestic chores, maintaining his car, vacuuming, and playing ball with his daughter. Deren Dibble, Browne's father-in-law, wrote that Browne could no longer sit through a family meal without leaving the table to walk around. (Pl. Br. at 19.)

> The ALJ stated that:
>
> The statement by Mr. Huey refers, in part, to the claimant not having an easy time changing the oil on his van and mowing the lawn. This would not be unexpected with a bad back. His observations of the claimant being up and down during a rental movie are not inconsistent with the above residual functional capacity which allows for a sit-stand option. In regards to Mr. Sellars, he also notes claimants problems with car maintenance, oil changes, tune-ups, vacuuming and sitting or standing for long periods. These observations are not contradictory to a limitation to sedentary work only. The claimants brothers-in-laws [sic], Jaylene Sellars and Matt Sellars, also wrote reports containing observations that are consistent with the reduced range of sedentary work herein.

Def. Brief, 17.

The ALJ accepted lay testimony to the extent that he found their observations were not inconsistent with his RFC assessment that plaintiff could perform a reduced range of sedentary work. The Commissioner concedes that the ALJ erred by dismissing lay testimony, in part, because their statements were "outside of their realm of expertise" (Tr. 575). An ALJ may not reject lay testimony because the lay witness is not knowledgeable (or does not have expertise) in

19  - OPINION AND ORDER

the medical or vocational fields. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).  The

Commissioner contends, however, that the ALJ's error in this respect is harmless because the

ALJ provided another reason for rejecting the lay statements; the lay witness statements

supported the inference that Browne's condition eliminated his capacity for all work, even

sedentary work with non-exertional limitations found by the ALJ in the RFC assessment.

*Valentine v. Comm'r of the Social Security Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (finding

harmless error when the ALJ erred with respect to some, but not all, of the reasons given for

rejecting lay witness evidence).  The ALJ's findings are to be upheld by the Court if supported by

inferences reasonably drawn from the record.  *Batson v. Comm'r of the Soc. Sec. Admin.*, 359

F.3d 1190, 1193 (9th Cir. 2004).

  Here, the ALJ properly considered lay testimony by providing germane reasons to reject

their statements to the extent that they supported any inference that Browne's condition would

rule out a capacity for all work, even sedentary work with non-exertional limitations.

  For the reasons set forth above, the ALJ's decision is supported by clear and convincing

evidence, was decided by the proper legal standards, and is therefore affirmed.


    Dated this 21ˢᵗ day of September, 2010.


    _____ /s/ John V. Acosta _____
      JOHN V. ACOSTA
    United States Magistrate Judge


20  - OPINION AND ORDER